JOHN HEATHCOAT & CO., INC. *v.* UNITED STATES (No. 4539)[1]

---

[1] C. A. D. 354.

United States Court of Customs and Patent Appeals, December 9, 1946

*John D. Rode* for appellant.
*Paul P. Rao*, Assistant Attorney General (*Sybil Phillips*, special attorney, of counsel), for the United States.

[Oral argument October 3, 1946, by Mr. Rode and Miss Phillips]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

BLAND, Judge, delivered the opinion of the court:

Appellant, importer, on November 3, 1941, imported at the port of New York certain rayon nets, admittedly made on a bobbinet machine, not embroidered, which were assessed for duty at 65 per centum ad valorem under paragraph 1529 (a) of the Tariff Act of 1930 as modified by our trade agreement with the United Kingdom, T. D. 49753 (74 Treas. Dec. 253), which provides for—

| Nets and nettings made on the bobbinet machine, not embroidered: | |
| --- | --- |
| *    .    *    *    *    * | |
| Wholly or in chief value of rayon or other synthetic textile_____ | 65% ad val. |

The collector also, upon the authority of section 303 of the Tariff Act of 1930, assessed a countervailing duty upon the same to compensate for a bounty in the amount of 5.69 pence per pound. Section 303, in substance, requires the assessment of additional duties upon imported goods upon which any bounty or grant has been paid upon their manufacture, production, or export. The section provides that the countervailing duty to be assessed shall be equal to the amount of such bounty or grant.

The importer protested the assessment of the countervailing duty for reasons hereinafter stated. It is conceded that the imported goods are nets and nettings made on a bobbinet machine, that the assessment of 65 per centum regular duty was proper, and that a countervailing duty of an amount equal to a bounty of 5.69 pence per pound, if applicable, is the correct amount to be assessed.

Before countervailing duties can be properly assessed it is necessary for the Secretary of the Treasury to "ascertain and determine, or estimate, the net amount of each such bounty or grant" and to "declare the net amount so determined or estimated."

The Secretary's findings, upon which the assessment of the counter-vailing duty on appellant's merchandise was based, were set forth in T. D. 43634 (56 Treas. Dec. 342), T. D. 47502 (67 Treas. Dec. 188), and T. D. 47594 (67 Treas. Dec. 463). T. D. 47502 provides in part as follows:

Reference is made to T. D. 43634, dated October 30, 1929, setting forth the net amounts of bounties or grants paid by the British Government on the export of certain manufactures of silk and artificial silk.

The Treasury Department is in receipt of official information that bounties are paid by the British Government within the meaning of the provisions of section 303 of the Tariff Act of 1930 on certain merchandise which is dutiable when imported into the United States. The merchandise is described as follows:

| *Article* | *Net amount of bounty* |
|---|---|
| (1) Artificial silk fabrics made from artificial silk on which a British excise tax of 6 pence per pound has been assessed and on which a drawback of 12 pence per pound has been allowed. | 5–69/100 pence per pound. |

It is the contention of appellant that while the instant importa-tions, in a broad sense, are artificial silk fabrics, they are not such for tariff purposes but are distinct and separate commodities, to wit, nets and nettings made on a bobbinet machine, and that since Con-gress has for many years distinguished between "nets and nettings" and "fabrics" there has been no proper finding by the Secretary of the Treasury and therefore the assessment of the countervailing duty is without authority of law.

The United States Customs Court, Third Division, overruled the protest of the importer and held that the assessment of the counter-vailing duty, upon the authorities hereinbefore referred to, was proper (C. D. 956). From the judgment of the trial court the im-porter has here appealed.

Appellant argues that from the Tariff Act of 1930 itself, as well as the tariff acts of 1922, 1913, and 1909, it is evident that Congress has distinguished between "nets and nettings" and "fabrics," and that in a number of trade agreements, including the British Trade Agree-ment, *supra*, nets and nettings have been singled out and have been distinguished from fabrics. It is further argued that in various findings of the Secretary of the Treasury with respect to the imposi-tion of countervailing duties he has, on many occasions, clearly dis-tinguished between fabrics and nets and nettings.

The importer then argues that T. D. 47502, wherein the Secretary states he made the findings involved here, instead of distinguishing, as it contends the Secretary should have done, between artificial silk nets and nettings and fabrics, only uses the term "artificial silk fabrics."

The trial court agreed with the contentions of the Government that the British Trade Agreement, heretofore referred to, which

lowered the rate of duty from 90 per centum to 65 per centum on nets and nettings made on a bobbinet machine, not embroidered, wholly or in chief value of rayon, carved out nets and nettings of the kind mentioned from the provision in paragraph 1529 (a) for "all fabrics * * * made on a * * * net machine," and that the Secretary of the Treasury's investigation and report were made to cover not only nets and nettings made on a bobbinet machine, but all artificial silk fabrics.

We think the investigation and report of the Secretary of the Treasury included articles of the kind in controversy and that it was not intended by the use of the term "fabrics" to exclude nets such as are here involved.

It seems to be conceded that there were many other fabrics other than nets and nettings the production and exportation of which formed the basis of the bounties granted in England and no good reason is seen why the makers of the trade agreement should not have had in mind all artificial silk fabrics. In fact, this is not disputed, but it is contended, as before stated, that there was no proper investigation and report and finding made by the Secretary of the Treasury on nets and nettings but only on "fabrics," which term, by reason of the facts aforesaid, excluded nets and nettings.

The importer, as before stated, concedes that nets are fabrics but urges that they are not fabrics for tariff purposes, and in its statement at the trial in the court below disclaimed any intention of proving commercial designation of the term "fabrics." So no question with respect to commercial meaning of the terms here involved is raised.

It is argued by the importer that in paragraph 920 of the Tariff Act of 1930 there is a specific provision for "nets" and "nettings" of a certain character and also a provision for "all other fabrics" and that this is congressional recognition of the distinction between the two terms.

While certain trade agreements, tariff acts, and Treasury Department promulgations have specially treated nets and nettings, it is clear to us that the term "fabrics" has usually been employed in a sense broad enough to include nets and nettings. This we think is evidenced by paragraph 920 rather than being in support of appellant's contentions. Said paragraph 920 provides for several fabric articles *eo nomine* and then includes at the same rate of duty "all other fabrics and articles * * * made on the Nottingham lace-curtain machine." The same suggestion is found in paragraph 1420 of the Tariff Act of 1922. It is significant to note, however, that in paragraph 1529 (a) of the Tariff Act of 1930, under which appellant concedes the instant merchandise is properly classified for duty purposes contains no provision for nets and nettings and these are specifically

provided for in said paragraph 920. Paragraph 1529 (a) exempts from its provisions all merchandise covered by said paragraph 920.

We think the Treasury decision upon the authority of which the countervailing duty was assessed was intended to include the merchandise involved, as was found by the trial court, and that the mere fact that in the British Trade Agreement nets and nettings were carved out of the term "all fabrics * * * made on a * * * net machine" does not suggest that the Secretary's investigation and report in the said Treasury decision did not embrace the instant merchandise.

There is nothing in the instant record or in the facts set forth by appellant which supports the conclusion that the investigation and report of the Secretary did not include and was not intended to include the instant merchandise.

The trial court pointed out the following, which we think was proper and in point on the issue involved:

It is interesting to note that in the pamphlet entitled "Commodities and Imports Under the Proposed British-United [States] Trade Agreement," which enumerates products on which the United States announced that it would consider granting concessions to Great Britain when the British Trade Agreement was in process of negotiation, being Senate Document No. 156, 75th Congress, 3rd Session, we find the following in the Department of State notice on page VI:

For the purpose of facilitating identification of the articles listed, reference is made in the list to the paragraph numbers of the tariff schedules in the Tariff Act of 1930 * * *. The descriptive phraseology is however in many cases limited to a narrower field than that covered by the numbered tariff paragraph or section in the revenue acts. * * *

Appellant argues that the cases of *Bullocks, Inc.* v. *United States*, 6 Cust. Ct. 110, C. D. 441, and *Joseph Schmidt, Inc.* v. *United States*, 9 Cust. Ct. 188, C. D. 690, support its contentions. These cases were discussed thoroughly by the trial court and need no extensive consideration here. However, they serve to make clear one phase of the importer's contentions.

The *Bullocks* case involved silk scarves or mufflers. The question was whether they were included in T. D. 47475 as silk fabrics. The court's decision was that they had been classified as "silk articles" and not as "silk fabrics" and therefore the Secretary had not made a proper order when he investigated only silk fabrics.

In the *Schmidt* case small papier-mâché figures were classified as manufactures of papier-mâché and not as toys and they were assessed for countervailing duty as toy figures under T. D. 48360. It was held that they could not be classified one way under the tariff act and another way under a countervailing duty promulgation.

The inapplicability of these cases, as is pointed out by the trial court, seems clear. There is no such inconsistency in the instant case; the goods imported will bear the same rate of duty as fabrics because

the provision of paragraph 1529 (a) of the Tariff Act of 1930 is for "all fabrics and articles, etc."

On this phase of the case the trial court said:

* * * the cases cited in support of this proposition fail to sustain plaintiff's contention. In the case of *Bullocks, Inc.* v. *United States*, 6 Cust. Ct. 110, C. D. 441, regular duty was assessed on silk mufflers as "articles," whereas countervailing duty was assessed under the classification of "fabrics." In *Joseph Schmidt, Inc.* v. *United States*, 9 Cust. Ct. 188, C. D. 690, paper-mache figures were classified as toy figures for countervailing duty purposes but held to be "manufactures of paper-mache, not specially provided for," for regular duty purposes. In both cases the court held in effect that if the merchandise did not fall under a certain designation for regular duty purposes, there would seem to be no justification for holding it classifiable under that designation for countervailing duty purposes. However, the decision of the court in each case was based upon the inconsistency of the two classifications. In the case at bar no such inconsistency exists. Plaintiff admits that the generic term "fabrics" includes nets or nettings, and it is plain that the merchandise here before us has been classified as rayon "fabrics" for all purposes, but that the assessment for regular duty purposes was made at the rate applicable to one class of fabrics, i. e., net and nettings made on a bobbinet machine.

We think the trial court's discussion of the two cases relied upon is unanswerable and need not be further discussed here.

The trial court arrived at the right conclusion in overruling appellant's protest, and its judgment so doing is *affirmed*.